BLOUNT *v.* PHILLIPS.*

(Division B. Jan. 25, 1926. Suggestion of Error Overruled Feb. 22, 1926.)

[107 So. 21. No. 25375.]

1. EXECUTORS AND ADMINISTRATORS. *Landlord, undertaking to sell tenant's property and settle with subtenants and heirs without taking out letters of administration or proceeding according to statutes, held liable as administrator de son tort.*

   Where a landlord, having a lien for rent and supplies and an unsecured debt, takes charge of the property of a tenant after his death, and undertakes to sell the property and settle with subtenants and heirs without taking out letters of administration, or proceeding according to statutory proceedings in favor of landlords, such acts constitute him an administrator *de son tort*, and he is liable as such.

2. EXECUTORS AND ADMINISTRATORS. *If answer of landlord does not disclose in detail property of deceased tenant disposed of, he should*

*be required to discover over, and master should be appointed to state account, or chancellor should state account.*

Where a bill was filed for discovery of assets in the hands of a landlord, and he answers and shows that he has taken charge of property belonging to the tenant, and has sold some of it, and has not sold some of it, without disclosing in detail the property received and disposed of, he should be required to discover over, giving full details of his transactions; and the court in such case should appoint a master in chancery to state an account, or the chancellor state an account between the complainant and the defendant.

*Corpus Juris-Cyc. References: Executors and Administrators, 24 C. J., pp. 1212, n. 43, 44; 1220, n. 74.

APPEAL from chancery court of Yazoo county.

HON. V. J. STRICKER, Chancellor.

Suit by J. T. Blount, administrator of the estate of Dan Travis, deceased, against T. H. Phillips, Sr. From a decree dismissing the bill, complainant appeals. Reversed and remanded with directions.

*Wise & Bridgforth,* for appellant.

The appellee presumed to take charge of a dead man's personal property and handled same to the gross injustice of the deceased's family and other creditors, under the claim of enforcing his landlord's lien—in fact, barring the family of said decedent from its statutory rights to support and maintenance, the widow of her exemptions, and the other creditors of a chance to share *pari passu* with the appellee in that portion of said personal property remaining after the debts legally secured by the landlord's lien for the year 1921 had been legally satisfied.

We call the court's attention to chapters 27 and 43, Hemingway's Code. After completely and fully satisfying that portion of the 1921 crop supplies, which was legally chargeable to the estate of the decedent from the proceeds of the 1921 crop, the appellee, if he can secure that much, is securing the maximum amount he can ask from a court of equity. The very moment he proceeded

to touch the proceeds of the 1921 crop in excess thereof (but the appellant firmly believes he had no right to any part of the 1921 crop in the manner in which he acquired it) he, the appellee, became a pure trespasser without any rights, was tortuously, arbitrarily and illegally interfering with the rights of others and attempting as administrator in his own wrong to give his own debts, which were probatable against the estate of the decedent the position of preferred claims, and was preferring his unsecured debt for 1920, not only to the rights of other creditors, but preferring same to the statutory claims of said decedent's widow and children, as set forth in chapter 27, Hemingway's Code. This general doctrine of the law is well established. There is no need to multiply the court's work by citation of authority. Therefore, we cite one case only: *Tillman* v. *Newman,* 71 Miss. 26.

*Montgomery & Montgomery,* for appellee.

I. It is contended by the appellant that the appellee, the landlord after the death of Dan Travis, acted wholly without warrant of law in taking the 1921 crop into his possession and selling the same and applying the proceeds on the indebtedness due him by the deceased; that this amounts to a conversion of the 1921 crop and that he stands liable to the administrator for the value thereof, the landlord being relegated in his rights to the enforcement of same in appellant's administration of the estate. In our opinion, this argument is without any merit whatever. See section 1722, Hemingway's Code (section 2057, Code of 1906). Our court construed this section in *McCormick* v. *McCormick,* 40 Miss. 760.

The contract in this case was not one terminated by death. Our court has already passed upon this question in *Cox* v. *Martin,* 75 Miss. 229, 21 So. 611. The Cox case differs from the case at bar only in two particulars. In that case the lien against the crop was the lien of a deed of

trust. In the instant case the crop is a landlord's lien. The statute, section 2330, Hemingway's Code, granting the landlord's lien prescribes that "this lien shall be paramount to all other liens, claims, or demands upon such products." The case at bar is a stronger lien than the lien in the Cox case. The other difference is that in the Cox case the administrator applied for and obtained an order for the completion of the crop and in the case at bar the administrator not only obtained no order for the completion of the crop, but by the holding in the *McCormick case, supra,* abandoned the crop, refused to carry out any of the terms of the contract with the landlord and wholly breached, violated and repudiated the contract.

Now the crop in question was raised on lands belonging in fee simple to the appellee. The right of Dan Travis to all or any part of the crop on the lands of appellee existed only by virtue of the contract he made with the appellee, whereby he rented the lands of appellee. Under this contract appellee was to furnish supplies and the deceased, Dan Travis, was to surrender the crop when ginned and prepared for sale to the appellee for the satisfaction of his landlord's lien. Outside of this contract and agreement, Dan Travis had no rights to the crop or any part thereof, grown upon the lands of appellee.

The rent contract not being terminated by the death of Dan Travis, as held in the Cox case above and also in *Alsup* v. *Banks,* 68 Miss. 664, 9 So. 895, and the estate of Travis being under the duty of carrying out this contract to make, gather and harvest the crop and prepare same for market, then when the administrator stands by failing and refusing to do anything with reference to the crop and abandons it, the administrator occupies the same position that tenant would have occupied had he abandoned the crop during his lifetime, and thereby he waives all right to the crop.

The appellee by virtue of his landlord's lien, for rent and furnish for 1921, was lawfully in possession of the entire crop of 1921. As a result of this the appellee, after paying the 1921 rent and furnish account was in possession of six hundred eleven dollars and sixty-four cents, which he desired to credit on the 1920 indebtedness of this deceased darkey, Dan Travis. We think he clearly had this right. Section 530, Hemingway's Code (section 747, Code of 1906). In our opinion, this statute squarely fits the case. See, also, *Abbay et al.* v. *Hill et al.*, 64 Miss. 340, 1 So. 484.

The decree of the lower court should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

. The appellant, as administrator of the estate of Dan Travis, brought suit against the appellee in the chancery court for discovery, alleging that he was appointed administrator by the chancery court of Humphreys county, Miss., some months after the death of the said Dan Travis; that the said Travis died intestate at his usual place of abode in Humphreys county, on land rented him by the defendant, on the ――― day of ―――, 1920; that the said Dan Travis also lived on land rented from the defendant during the year 1921, and that during the said years the defendant furnished the said Dan Travis in part; that on the 19th day of February, 1920, the defendant furnished the deceased Travis with one thousand one hundred dollars in cash, taking his promissory note for one thousand two hundred sixty-five dollars, due December 1, 1920, with six per cent. interest, taking a deed of trust upon certain livestock owned by the deceased to secure said note. Travis was possessed of certain livestock (a list of which, and the value thereof is filed as an exhibit to the bill) and certain other property, and a number of bales of cotton grown in 1920, a part of which cotton was the individual property of Travis, and in the other part of which he held a one-half interest with

his tenants by virtue of the fact that same was grown on the land rented by Travis from the defendant. A list of said cotton so owned with gin return for each bale, save one, is filed as an exhibit to the bill. It is further alleged that the complainant was informed and believes that twenty-one bales of this cotton were of the Webber variety of staple cotton, and ten bales were ''short'' cotton; that during the year 1921 the said Travis, together with his share hands in the crops of which he was entitled to share, produced about two hundred bushels of corn and about twenty bales of cotton, the exact number of which, and the quality and weight of which, are unknown to the complainant, save that the complainant has gin returns for ten of said bales, but that the defendant took charge of said cotton and seed therefrom, and all corn; that complainant is informed and believes that the defendant claims to have furnished said Travis with other supplies for the year 1920, about all of which complainant knows nothing, but all of which is peculiarly within the knowledge of the defendant; that the complainant is informed and believes that the same has been paid from sales of said cotton. It is further alleged, on information and belief, that the defendant foreclosed the deed of trust hereinbefore mentioned, purchasing the property conveyed thereunder, but that the complainant is informed and believes that the defendant has still in his charge the 1920 crop above mentioned, and alleges upon advice that the foreclosure of the deed of trust was illegal and defectively advertised, and that the sale thereunder was not sufficient to divest the title of the complainant of his right to such property; that the amount furnished Travis during the year 1921 is to the complainant unknown, but is known to the defendant, who was to keep an account. between himself and the said Travis, and alleges upon information and belief that the said account has been paid from sales of cotton; that the complainant does not know what disposition defendant has made of the said cotton for either the year 1920 or 1921, and charges

that the said cotton was turned over to the defendant, and that the whereabouts of the same are within his knowledge; that the defendant has refused to turn over to the complainant the said cotton, and seed therefrom, livestock, wagons, tools, and corn, but claims that Travis was indebted to him, and that he would hold the same and not disclose to the complainant the property to which the complainant is entitled, which, save for the part subsequently sold by him, is now in his possession; that he has refused to account to the complainant for the said Travis during said years. Wherefore a discovery was prayed that he be required to answer under oath to the following matters: (1) The weight, quality, and grade of each bale of cotton owned by Travis in whole or in part or of those in his employ from the crops of 1920 and 1921 coming into his hands; (2) the name of the purchaser, date, and place of sale, the selling price of each bale of cotton owned in whole or in part by the said Travis or those in his employ from the crops of 1920 and 1921, and that on final hearing the defendant be required to account to the court for each and every bale of said cotton at its true value, and for all the personal property converted by him belonging to the said Travis, and that an accounting be had between the testator and the defendant, and that the complainant be given a decree over against the defendant for whatever may be due the complainant in his capacity as administrator of said Travis, and for general relief.

The defendant answered, admitting that Travis lived on land rented from the defendant during the year 1920; that he loaned Dan Travis the sum of one thousand one hundred dollars in cash on February 19, 1920, and took Travis' note for one thousand two hundred sixty-five dollars, secured by deed of trust upon certain mules of the said Travis; denied that at the time of his death the said Travis was possessed of livestock of the value and description set out in complainant's bill, or of the property set out therein; admitted that there were a num-

ber of bales of cotton of the 1920 crop in the hands of the
defendant, a part of which the deceased individually
owned, the remainder of which the said Travis owned a
one-half interest in by virtue of same having been raised
by share croppers working for deceased on lands rented
by him; but denied that the list filed by complainant was
correct or accurate; but alleged the fact to be that some
of the weights contained in said list are incorrect and
some of the cotton raised not included in said list. The
defendant alleges that the correct weights and the cor-
rect number of bales are disclosed in his answer, and
says that all of said cotton was subject to his lien, as
landlord, for rent and supplies furnished the deceased.
Further answering, defendant says that all of said cot-
ton, along with other cotton produced by him, was turned
over to Messrs. Reed & Hollowell, cotton factors of Yazoo
City, Miss., to be sold by them for his account; that some
of said cotton was sold by them on various dates to va-
rious parties, and accounts of sales rendered by them to
the defendant for said sales; that defendant has no recol-
lection or record of the class or grade of any of said cot-
ton, except that part of said cotton, the amount not recol-
lected, was "short" cotton; that Reed & Hollowell have
no record of the class or grade or staple of said cotton;
and that he has been unable to obtain same from them,
though he has requested such information of them. De-
fendant further says that a part of the cotton was not
sold by Reed & Hollowell, but was turned over to the
Co-Operative Cotton Growers' Association, whose head
office is at Greenwood, Miss.; wherefore defendant neither
admits nor denies that twenty-one bales of said cotton
were of the Webber variety and that ten bales were
"shorts," as complainant has alleged, but, if defend-
ant's interests are in any way to be affected thereby,
he demands strict proof of the same.

Defendant denied that the crop of 1920 amounted to
twenty bales of cotton and two hundred bushels of corn,
but alleged the fact to be that——— bales of cotton were

raised on the land rented by deceased in said year, and neither admits nor denies that the exact number and quality and weight of each bale are unknown to complainant.

The defendant admits that the amount due for supplies furnished in 1920 has now been paid for from proceeds of sales of cotton produced in the years 1920 and 1921; admits that the deed of trust above mentioned was foreclosed and the property purchased at the foreclosure sale by the defendant; but denies that the indebtedness secured by the deed of trust was in full of all money and all supplies furnished deceased in 1920; denies that it was necessary for him to first sell said 1920 crop before he could proceed to foreclose the deed of trust; denies that all of the 1920 crop was in his possession at the time of the foreclosure, the greater part of the same having before that time been sold; denies that the foreclosure of said deed of trust was illegal; denies that the foreclosure was defectively advertised or was insufficient to divest title of the deceased in said property. He admits that the method and amount furnished to the said Travis in the year 1920 is known to this defendant; admits that he kept an account between himself and the said Travis for the years 1920 and 1921; and furnishes information with reference thereto marked exhibit A to his answer. Defendant admits that the cotton produced in 1920 and 1921 was turned over to defendant; denies that he has sold a part of the same; admits that he has refused to turn over to the complainant said cotton, and the seed therefrom, livestock, wagons, tools, and corn; admits that he claimed the said Travis was indebted to him, and still so claims; admits that a part of said cotton is now in his possession, that is, in the hands of the association to his account; denies that he has ever at any time refused to deliver to complainant an itemized statement of the account of the said Travis for the years of 1920 and 1921. Further answering, he says that a part of the 1920 crop was sold prior to the death of the deceased,

with the express approval of the deceased; that, in order
to settle the accounts of the tenants of the deceased and
to make· settlement with the tenants, it was necessary
that the remainder of the crop be sold, and, there being
no market for the same, this defendant and the deceased
agreed upon a price for the remainder of the 1920 crop,
which had not been sold, and that said cotton was pur-
chased by the said defendant from the deceased in ac-
cordance with the price agreed upon, which cotton was
later sold at a smaller price than he paid the deceased
for same; that with reference to the crop of 1921, de-
ceased having died before the sale of the crop, it was
necessary to sell the cotton in order to make a settle-
ment with the tenants; and that this defendant agreed
upon a price with the tenants of the said deceased and
the heirs of said deceased for all of the cotton which they
had been unable to sell, and bought said cotton from said
heirs and tenants at and for the price agreed upon, and
settled with said tenants on the basis of said price.

The defendant, on oath, says that he has no record of
the quality and grade of the cotton raised by deceased
or his tenants during the years 1920 and 1921; that said
cotton was delivered to Reed & Hollowell, cotton factors
of Yazoo City, Miss., to be by them sold for his account;
that he is advised by Reed & Hollowell that they have no
record of·the quality and grade of said cotton; that part
of said cotton was sold by the above named cotton fac-
tors, and a part was turned over to the cotton associa-
tion, and the defendant has no record of the persons to
whom same was sold; that the original accounts of sales
have, in part, been lost or destroyed through inadvert-
ence, but that he has applied to Reed & Hollowell for in-
formation prayed to be discovered, and on the basis of the
information furnished by said Reed & Hollowell, and that
alone, he discovers the tag number, weight, by whom pro-
duced, and the price for which each bale of cotton of
the 1920 and 1921 crops that had been sold was so sold,
and the bales that have not been sold have been turned

over to the association for the account of the defendant. The defendant has no record of the date of sales, nor has any information as to the same; that defendant has been unable to obtain a list of the prices received from the association for the cotton sold them by him, although he has made effort so to do, and files as a part of his answer his correspondence marked Exhibits E, F, and G.

Exhibits E, F, and G, are letters passing between the defendant and the cotton association. The letters were written by the attorneys for the defendant; gave the gin weight, tag numbers of the cotton raised in 1920 and 1921, and the names of the parties who raised the cotton; and concluded the letter with:

"This suit is one calling for a discovery on the part of Mr. Phillips, and we will have to have it before we can prepare the answer."

The association in reply said:

"In reply to your letter of October 16th asking for certain information in regard to the account of Mr. T. H. Phillips, Sr., for the years 1920 and 1921, respectively, it will be very difficult for us to give you the information unless you furnish us with the compress tag numbers representing the cotton delivered to us by Mr. Phillips. Kindly supply us with this information, and we will immediately examine our records and furnish you with all information we have regarding this account."

To this letter the attorney for the defendant replied:

"Referring to our letter to you of November 16th, relative to prices obtained by you for Mr. Phillips for 1920 and 1921 cotton as described in said letter, we beg to advise that we have been able to obtain no better description of the cotton, the compress tag numbers not being available. If you can give us the information asked for without the compress tag numbers please do so. If you cannot do so, please advise us to this effect, so that we may answer."

To this the association replied:

"In reply to your letter of November 14th: There is no way for us to give you the relative price for the cotton delivered us by Mr. Phillips for the season 1920-1921, unless you can secure for us a list of the original compress tag numbers."

The chancery court heard the matter on bill, answer, and exhibits, and dismissed the bill, from which decree this appeal is prosecuted.

It appears from the bill and answer that Phillips, after the death of Travis, took charge of the crops and property of the deceased, and undertook to settle his accounts with the tenants and heirs of the deceased without administration proceedings, and without resorting to a proceeding under the landlord and tenant chapter. In doing this he became an administrator *de son tort*. It further appears that some of the cotton was still in his possession—at least was in the possession of his agents, the cotton association—and had not been disposed of. It further appears that there was a balance of the account of 1920 carried forward into the year 1921, and that there was no lien on the crop of 1921 for the payment of this balance.

The administrator not only acts for himself and the deceased, but he represents the creditors in collecting the assets for distribution among the creditors according to their rights, and for the wife and children of the deceased in securing for them the year's support set apart by statute for their use.

We think it was error, therefore, for the chancellor to dismiss the bill. He should have required a more specific discovery, and should have either stated an account or referred the matter to a master in chancery to state an account between the parties. In cases of fiduciary relations the court should see that the administrator, or other trustee, takes appropriate steps to protect the rights of all parties concerned. The judgment of the court will therefore be reversed, with directions to have the account stated and to secure more specific information as to the unsold cotton.

*Reversed and remanded.*